New-Haven,
July, 1842.

Hale
v.
The State.

HALE *against* THE STATE OF CONNECTICUT :

IN ERROR.

Where a person, on a complaint, exhibited to a justice of the peace, in *April*, 1841, for a violation of the statute of 1839, regulating the sale of spiritous liquors, was bound over to the county court to be holden in *June* following; and the legislature, in the mean time, passed the act of 1841, on that subject, giving the jurisdiction of the offence to a justice of the peace, and repealing so much of the former act as was inconsistent with this ; it was held, that the county court had not jurisdiction of an information, filed at said *June* term, against the person so bound over, for such offence.

ON complaint made to a justice of the peace, in *April*, 1841, against *William H. Hale*, for the sale of spiritous liquors and wine, contrary to the statute of 1839, he was bound over to the next term of the county court, holden in *June*, 1841. At this term of the county court, the attorney for the state exhibited an information against him, charging, in the 1st count, that said *Hale*, on the 1st of *April* 1841, at *North-Branford*, without being authorized to sell spiritous liquors or wine within said town, and not being a legally licensed tavern-keeper, did, then and there, sell spiritous liquors, *viz.* one pint of brandy, &c., and wine, to *Alonzo Leete.* The 2nd count alleged a sale of spiritous liquors and wine to the same person, to be drunk in said *Hale's* dwelling-house. The 3rd alleged a sale to *Benjamin Griffith :* and the 4th a sale to him, to be drunk in said *Hale's* dwelling-house.

To this information the defendant demurred specially, assigning for cause of demurrer, 1st, that the act of the General Assembly, entitled " An Act relating to the sale of spiritous liquors," passed in the year 1839, was the act upon and by virtue of which he was prosecuted and bound over to the county court, in a recognizance to answer to the information to be filed against him for the offence complained of, and to abide the judgment to be rendered thereon ; and that said act was repealed, by an act of the General Assembly, passed in 1841, entitled " An Act in addition to and in alteration of an Act, entitled an Act relating to the sale of spiritous liquors ;" by which last-mentioned act, the county court is

prevented from having original jurisdiction of this cause, and by which original jurisdiction, in such case, is given to a justice of the peace: 2ndly, that the act of 1839, so far as it prohibits the sale of any wines or spiritous liquors in any town in this state, is against the constitution and laws of the *United States,* and in violation of the treaties between the *United States* and foreign nations from whose territories and dependencies spiritous liquors and wines are permitted to be imported into the *United States.*

The cause was continued to the term of the county court, holden in *November* 1841, when the demurrer was overruled, and judgment was rendered against the defendant, imposing a fine of 20 dollars, with costs, taxed at 33 dollars, 39 cents. The defendant thereupon brought a writ of error in the superior court; and the judgment of the county court was there affirmed. He then, by motion in error, brought the record before this court for revision.

*Kimberly,* for the plaintiff in error, contended, 1. That the county court had not jurisdiction. The statute of 1839, *s.* 4. imposed a penalty of 20 dollars for a violation of its provisions. This being a greater penalty than a justice of the peace could impose, the offence, under that statute, was cognizable by the county court. *Stat.* 171. *s.* 121. 122. (ed. 1838.) And the justice before whom the complaint in this case was first made, acted properly, if he found the proof sufficient, in binding the defendant over to the county court. *Sect.* 123. But before the sitting of that court, and before the present information was filed, the legislature passed an act giving the jurisdiction of " all prosecutions for a violation of the provisions of the 4th section of the act" of 1839, to justices of the peace, with power to impose the fine therein named, subject to the right of appeal to the county court; and by another section, all acts, and parts of acts, inconsistent with the provisions of this act, were repealed. *Stat.* of 1841, *p.* 62, 3. This, then, put an end to the power of the county court to hold original jurisdiction of this offence. When a statute is repealed, without qualification, it is considered as though it had not existed, except as to proceedings and matters, then finished and closed. *Dwarris on Stat.* 676. *Yeaton* & al. v.

New-Haven,
July, 1842.

Hale
v.
The State.

*The United States,* 5 *Cranch* 281.   *Commonwealth* v. *Kimball,* 21 *Pick.* 373.

2. That the acts of 1839 and 1841, absolutely prohibiting the sale of spiritous liquors and wine, were unconstitutional and void, within the decision of the supreme court of the *United States,* in *Brown &* al. v. *The State of Maryland,* 12 *Wheat.* 419.

*R. I. Ingersoll,* for the defendant in error, contended, 1. That the county court had jurisdiction of the cause.   While it was pending in the county court, the legislature enacted, that "justices of the peace *may* hold jurisdiction."   This last act did not vary the offence, or the penalty, or the treasury to which the penalty should go.   It did not repeal the former act, but only so much of it as was "*inconsistent* with the provisions of this act."   Now, in the county court's retaining its jurisdiction of prosecutions already before it, by a binding over, and undisposed of, at the date of the last act, there was nothing inconsistent with justices of the peace taking jurisdiction of prosecutions *thereafter* to be commenced.   The new act was prospective.   Indeed, it could not be retroactive, unless so made by express language.   *The Thames Manufacturing Company* v. *Lathrop &* al. 7 *Conn. Rep.* 550.   *Perkins* v. *Perkins,* 7 *Conn. Rep.* 558.   *Dwarris on Stat.* 674.

2. That this judgment is not erroneous, on the ground that our statutes regulating the sale of spiritous liquors and wine, are unconstitutional within the principle of *Brown &* al. v. *The State of Maryland.*   In the first place, the record here does not shew, that the liquors sold by *Hale,* were *imported·* The law in question is applicable to all spiritous liquors, whether imported or not.   But secondly, is it so that a state legislature can impose no restriction upon the sale of an imported article?   We regulate, or authorize our cities to regulate, the sale and use of gun-powder; and we prohibit the sale of playing-cards and indecent prints and books; but gun-powder, playing-cards, and prints and books of all descriptions, may be imported under the laws of Congress, on the payment of the revenue duties.   If the doctrine contended for on the other side, is sound, most of our tax laws are unconstitutional.   We tax carriages, time-pieces, horses, cattle, plated ware &c.—all of which may be imported.

*Flagg*, for the plaintiff in error, was stopped by the court.  New-Haven, July, 1842.

Hale
v.
The State.

HINMAN, J. The principal question in this case, and the only one which it is necessary for us to examine, is this:— whether the act of the legislature in 1841, entitled " An Act, in addition to and in alteration of an Act, entitled an Act, relating to the sale of spiritous liquors," so far alters and repeals the act of 1839, to which it is an addition and alteration, as to oust the county court of original jurisdiction of a prosecution for a violation of the act of 1839, commenced before a justice of the peace, just previous to the session of the General Assembly in 1841; and on which, the delinquent was bound over to the *June* term of the county court, holden after the termination of that session of the Assembly.

The penalty imposed in the 4th section of the act of 1839, for a violation of that act, is a fine of twenty dollars. But the extent of fine, which a justice could impose, was seven dollars, only.

It followed, of course, that a justice had not final jurisdiction of this offence, and the delinquent was, therefore, properly bound over to the county court. But, previous to the session of that court, the session of the General Assembly intervened, and that Assembly enacted, that in all prosecutions for a violation of the 4th section of the law of 1839, " justices of the peace may hold jurisdiction, and may impose the fine therein named, subject to appeal, on the part of the accused, to the county court, the same as in other criminal prosecutions;" and then repealed all acts and parts of acts inconsistent with the provisions of this act. *Acts of* 1841, *p.* 62, 63.

The general criminal jurisdiction of the county court, is given in the 121st section of the statute concerning crimes and punishments. *Stat.* 171. (ed. 1838.) It is there provided, that " the county court shall have jurisdiction of all offences and crimes appealable from justices of the peace, excepting in cases where the jurisdiction of particular cases and offences is, or may be by law, conferred upon, or confined to, particular courts. And the county court shall have jurisdiction and cognizance of all offences and crimes not given to the sole jurisdiction of the superior court, *and not given to the jurisdiction of justices of the peace."*

The act of 1841, conferred upon justices of the peace jurisdiction of this offence, and authorised them to impose the penalty—a fine of twenty dollars. The jurisdiction, therefore, of the county court was taken away, as that court is not authorised to hold jurisdiction of criminal matters concurrently with justices. The same act, therefore, which confers jurisdiction on them, takes it away from the county court. The act of 1841, we have already seen, conferred jurisdiction of this offence on justices. That act is positive and explicit in its terms. No exception is made ; and there is no provision for cases then pending, or in which proceedings had been commenced. The county court, therefore, in proceeding to hold jurisdiction of this offence, (the case not having been brought before it by appeal,) manifestly erred. And the judgment of the superior court, affirming the decision of the county court, must be reversed.

In this opinion the other Judges concurred.

Judgment reversed.